IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DMONTE CHEMAR SHOWELL, | Civil No. 3:22-cv-540 |
| Petitioner | (Judge Mariani) |
| v. | |
| WARDEN J. SAGE, | |
| Respondent | |

**MEMORANDUM**

Petitioner Dmonte Chemar Showell ("Showell"), an inmate currently incarcerated at the Federal Correctional Institution, Schuylkill, Pennsylvania ("FCI-Schuylkill"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Showell seeks an Order directing the Bureau of Prisons ("BOP") to award him 180 days of earned time credits ("ETC") pursuant to the First Step Act ("FSA"). (*Id.* at p. 8). For the reasons set forth below, the Court will deny the habeas petition.

**I.  Background**

Showell is serving a 60-month term of imprisonment imposed by the United States District Court for the Eastern District of North Carolina for possession of a firearm with an obliterated serial number. (Doc. 10-1, pp. 5-7). Showell's projected release date is April 9, 2023, via good conduct time release. (*Id.*).

The BOP has currently assessed Showell as having a high risk of recidivism. (Doc. 10-1, pp. 12-13).

The Administrative Remedy Generalized Retrieval reveals that Showell filed five administrative remedies while in BOP custody. (Doc. 10-1, pp. 8-11). All of those administrative remedies relate to disciplinary hearings. (*Id.*). None of the administrative remedies pertain to time credits under the First Step Act. (*Id.*).

In his § 2241 petition, Showell asserts that he is entitled to the application of 180 days of earned time credits. (Doc. 1). Respondent contends that Showell's § 2241 petition must be denied because: (1) Showell failed to exhaust his administrative remedies; and (2) Showell is not eligible for earned time credits at this time. (Doc. 10).

## II.   Discussion

### A.   Exhaustion of Administrative Review

Despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing a habeas claim under § 2241. *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981) (*per curiam*)). Thus, "a federal prisoner who . . . fails to exhaust his administrative remedies because of a

procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." See id. at 762. However, exhaustion is not required when it would not promote these goals, such as when exhaustion would be futile. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, No. 00-2958, 2000 WL 1022959, at *2 (E.D. Pa. July 10, 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

      The BOP has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (2005). If an issue raised by the inmate cannot be resolved through this administrative remedy system, the BOP will refer the inmate to appropriate statutorily mandated procedures. 28 C.F.R. § 542.10(c). The system first requires an inmate to present their complaint to staff before filing a request for administrative relief, which staff shall attempt to informally resolve. 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, an inmate may file a formal written complaint to the Warden, on the appropriate form, within twenty calendar days of the date of the event or occurrence and the Warden shall provide a response within twenty

calendar days. 28 C.F.R. §§ 542.14, 542.18. If the inmate is dissatisfied with the Warden's response, he may file an appeal to the Regional Director within twenty calendar days. 28 C.F.R. § 542.15(a). The Regional Director has thirty calendar days to respond. 28 C.F.R. § 542.18. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may be appealed to the BOP's General Counsel at Central Office within thirty calendar days from the date of the Regional Director's response. 28 C.F.R. § 542.15(a). No administrative remedy appeal is considered fully exhausted until reviewed by the BOP's Central Office. 28 C.F.R. § 542.15(a).

The BOP maintains a database known as the SENTRY Inmate Management System ("SENTRY"). In the ordinary course of business, computerized indexes of all formal administrative remedies filed by inmates are maintained by the Institution, Regional, and Central Offices. SENTRY generates a report titled "Administrative Remedy Generalized Retrieval" which allows codes to be entered to identify the reason or reasons for rejecting a request for administrative relief.

Showell's Administrative Remedy Generalized Retrieval report reveals that he failed to properly exhaust the claims in the instant habeas petition. (Doc. 10-1, pp. 8-11). The record reflects that Showell filed a total of five administrative remedies. (*Id.*). In all five administrative remedies, Showell appealed the findings of a disciplinary hearing officer. (*Id.*). None of the administrative remedies relate to time credits under the First Step Act. (*Id.*).

4

Showell does not dispute that he commenced the instant action without first exhausting the BOP's administrative remedy procedure. (Doc. 1, pp. 2-3). Even if Showell thought pursuit of his administrative remedies would be futile, "[c]ourts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals.'" *Ross v. Martinez*, No. 4:09-cv-1770, 2009 WL 4573686, at *3 (M.D. Pa. Dec. 1, 2009) (quoting *Malvestuto v. Martinez*, No. 1:09-cv-1339, 2009 WL 2876883, at *3 (M.D. Pa. Sept. 1, 2009)); *see also Suarez-Sanchez v. Lane*, No. 4:18-cv-1431, 2019 WL 1645231, at *3-4 (M.D. Pa. Mar. 5, 2019) (concluding that the petitioner's § 2241 petition was subject to dismissal for failure to exhaust because the petitioner "never fully and properly appealed [his] grievance because he apparently deemed the grievance process to be a waste of time"), *report and recommendation adopted*, 2019 WL 1620339 (M.D. Pa. Apr. 16, 2019).

The Court recognizes that administrative exhaustion is not required if "the issue presented only pertains to statutory construction." *Kurti v. White*, No. 1:19-cv-2109, 2020 WL 2063871, at *3 (M.D. Pa. Apr. 29, 2020). In *Goodman v. Ortiz*, No. 20-7582 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020), the parties did not dispute that the inmate-petitioner had successfully participated in several programming activities that met the requirements of the FSA or had earned a specific number of ETC. *See Goodman*, 2020 WL 5015613, at *2. Instead, the court considered whether the FSA required that the ETC

earned by the petitioner be applied before January 15, 2022. *See id.* The court concluded that the inmate-petitioner was exempt from the administrative exhaustion requirement because the matter "present[ed] a narrow dispute of statutory construction" and because "habeas relief should be granted." *See id.* at *3. However, the instant case not only involves when Showell is eligible for the application of any ETC, but also involves a dispute as to the specific number of ETCs earned by Showell, as his ETCs have not yet been fully calculated. The latter issue is unrelated to statutory construction and, therefore, the exhaustion requirement cannot be excused. *See Kurti*, 2020 WL 2063871, at *3 (noting that the petitioner "has clearly failed to exhaust administrative remedies with respect to the time credit he requests"); *see also Cohen v. United States*, No. 20-cv-10833 (JGK), 2021 WL 1549917, at *4 (S.D.N.Y. Apr. 20, 2021) (concluding that the inmate-petitioner was not excused from exhausting because the parties disputed his "eligibility for, participation in, and applicability of the various programs he claims to have completed to any potential time credits under the FSA"); *Maggio v. Joyner*, No. 7:21-21-DCR, 2021 WL 1804915, at *1-2 (E.D. Ky. Mar. 25, 2021) (concluding same to determine that the inmate-petitioner's § 2241 petition was subject to dismissal for failure to exhaust). Thus, Showell's § 2241 petition must be dismissed for failure to exhaust his administrative remedies. To hold otherwise would frustrate the purposes of the exhaustion doctrine by allowing Showell to invoke the judicial process despite failing to complete administrative review. Nevertheless, the Court will address the merits of his petition below.

### B.     Merits of the Habeas Petition

Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System ("the System") within 210 days of December 21, 2018, the date on which the FSA was enacted. *See* 18 U.S.C. § 3632. The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (4) reassigning an inmate to appropriate evidence-based recidivism reduction programs ("EBRRs") and PAs; (5) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (6) determining when the inmate is ready to transfer to pre-release custody or supervised release. *See id.* § 3632(a). Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs." *Kurti*, 2020 WL 2063871, at *4 (citing 18 U.S.C. § 3632(b)).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive earned time credits to be applied toward time in pre-release custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A). An inmate may earn ten (10) days of credit for every thirty (30) days of successful participation. *See id.* Moreover, eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two (2) consecutive assessments may earn five (5) days of time credit for

every thirty (30) days of successful participation. *See id.* However, an inmate may not earn time credits for EBRR programs completed prior to the enactment of the FSA. *See id.* § 3632(d)(4)(B)(i). The Attorney General was allowed 210 days after the FSA was enacted to develop and publish the System, which the BOP then used as a guide to implement the EBRRs and PAs. *See id.* § 3632(a). The Attorney General published the System on July 19, 2019, and the BOP then had 180 days, or until January 15, 2020, to implement the System, complete assessments, and begin to assign prisoners to appropriate EBRRs. *See Kurti*, 2020 WL 2063871, at *4 (citing 18 U.S.C. 9 § 3621(h)). Moreover, the FSA provides that EBRRs and PAs are to be phased in over a period of two (2) years, from January 15, 2020 to January 15, 2022. *See* 18 U.S.C. § 3621(h)(2).

ETC credits are "earned only when an inmate successfully completes one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate." *Hare v. Ortiz*, No. 20-14093, 2021 WL 391280, at *9 (D.N.J. Feb. 4, 2021). Respondent submitted the Declaration of Jennifer Knepper, BOP Attorney Advisor, wherein she explains that inmates who are eligible for FSA time credits can accrue credits, but they cannot be applied until the inmate has earned a low or minimum recidivism risk. (Doc. 10-1, p. 4 ¶ 7). The BOP has assessed Showell as currently having a high risk of recidivism. (*Id.* at pp. 12-13). Thus, even if Showell completes EBRR programs and PAs that correspond with an identified need, the BOP may not apply credits for successfully completed programs until Showell has received a minimum or low risk PATTERN score for two consecutive

assessments. *See* 18 U.S.C. § 3624(g)(1)(D)(i); 28 C.F.R. § 523.42(c)(2)(i)-(ii); 28 C.F.R. § 523.44. Because Showell does not have a minimum or low risk PATTERN score for two consecutive assessments, the BOP may not apply credits for successfully completed programs. *See id.* Thus, the Court cannot grant Showell the relief he seeks.

### III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 will be denied. (Doc. 1). A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: June 14, 2022